### U.S. District Court for the District of Columbia

| | |
|---|---|
| Zachariah Mills (pro se) | |
| Plaintiff, | Case Number (1:22-cv-01001) |
| v. | C.K.K. |
| American University, et al. | JURY TRIAL DEMANDED |
| Defendants. | |

### Motion for Extension of Time to Serve Summons

The primary defendant – American University – is evading my service of summons. It is interdicting my emails containing summons and notice of litigation intended for its employee-defendants.

Therefore, I move the Court to extend the time limit to serve summons on all Defendants by 90 days, and other appropriate reliefs.

**Attempts to Request Waiver of Summons.** On June 27, I obtained a summons for each of the sixteen defendants.[1] Between June 28 and June 29, I emailed each of the sixteen defendants a Rule 4(d) waiver with appropriate attachments. Ex. 1 (an example of the

---

[1] According to PACER, there are currently seventeen defendants – two institutional defendants (American University and American University Police Department) and fifteen individual defendants. In my amended complaint, ECF. No. 7, I did not intend to list the police department as a defendant independent from American University.

emails).[2] I did so from my personal email account (Account A). *See* Ex. 2 (list of recipient email addresses, date, and time of transmission). June 29 was the last day for service of summons under Rule 4(m).

**AU Blocked Account A from its Email System.** By 11:30 P.M. on June 29, I had not received a single response. My instinct: the university had blocked Account A from its email system. It was before Independence Day. In my experience at the school, quite a few employees would have gone on leave at the point. They would have set up an automatic reply that would mention they would return from leave. Yet, none of the fourteen emails I sent to @american.edu addresses resulted in an automatic reply. AU counsel stated that it has not blocked

**Experiment Proved AU Blocked Me.** I designed an experiment to test my hypothesis that AU had blocked my email address, despite AU counsel's statement to the contrary[3]. I registered a new email account (Account B), which AU could not have the prescience to block.

---

[2] Specifically, I emailed each defendant: 1) a copy of the Summons; 2) a copy of the Notice of a Lawsuit and Request to Waive Service of a Summons; 3) a copy of the complaint, ECF. No. 1; 4) a copy of the amended complaint, ECF. No. 7, and 5) a blank waiver form.

[3] Mr. Justin Perillo: "I also wanted to clarify the University has not blocked [your] email communications to the University. Your assertion to the contrary is false." (March 11, 2021) "As mentioned in my March 11, 2011 email, the University did not blocked your [] email communications to the University." (March 19, 2021)

From Account B, at around 11:55 P.M., I emailed 38 AU employees at their @american.edu email addresses, informing them that the lawsuit references them[4] and that I intend to pursue claims against them as individuals. I provided a copy of the complaints. I briefly discussed their connection to the lawsuit.  I asked them to preserve evidence. 26% of the 38 recipients immediately sent an automatic reply, including university Associate General Counsel Mr. Perillo at 11:56 P.M.[5]

**AU Blocked My Alternative Email Account in Real Time.**

Having confirmed that the university's email system had blocked Account A, I then emailed Mr. Perillo from Account B at 12:30 A.M. to request an explanation of his prior statements to the contrary.[6] To my surprise, I did not receive the same automated response. I had last emailed @american.edu addresses 35 minutes earlier from Account B. I also resent the fourteen Rule 4(d) waivers at 12:48 A.M. from Account B. *See* Ex. 2. Again, I receive no automatic reply.

---

[4] *See, e.g.*, amended complaint, ECF. No. 7 (Count 7 and Count 9).

[5] Mr. Perillo: "Thank you for your message. I will be out of the office on Monday June 20, 2022 returning on Tuesday July 5, 2022.  I will respond to your message when I return to the office on Tuesday July 5, 2022." Mr. Perillo has not replied on July 5, 2022.

[6] *Supra* note 3.

**What Happened?** The evidence led me to two tentative hypotheses: 1) between 11:55 P.M. and 12:30 A.M., Mr. Perillo stopped his automatic reply; 2) in the same 35 minutes, someone ordered stand-by AU IT staff to block Account B from @american.edu.

**Experiment Redux Proving AU Blocked My Alternative Email Account in Real Time.** To test the first hypothesis, one hour later, from both Account B and a third email account (Account C), I emailed two @american.edu addresses which sent me an automatic reply, including that of Mr. Perillo. Account B received no automatic reply. Account C received two automatic replies.

**My Preliminary Findings.** I conclude that the second hypothesis was most likely correct: at midnight on the Thursday before Independence Day, within 35 minutes of my first email from Account B, AU had ordered stand-by IT staff to block Account B from @american.edu. As a result, I do not know if any of @american.edu recipients received my request for Rule 4(d) waiver.

**AU's Evasive Tendency.** This peculiar and frustrating episode reminds me of the university's history of evasive and duplicitous responses, especially in relation to FERPA requests I filed with AU for my educational records. Prior to and since the university dismissed me under false bases, I have repeatedly requested access to my

4

university educational records. I needed my educational records to assert my civil rights through various university disciplinary proceedings in 2019 and 2020.

For my first request in 2019, AU made an incomplete disclosure while misleading me to believe that it was complete. Eight months later, in an internal memo, AU fabricated that it made a complete disclosure. *See* Ex. 3. When I requested the Department of Education investigate AU's compliance with FERPA, AU repeated the lie that the disclosure was complete to the Department. *See* Ex. 4 (AU false representation to the Department).[7]

---

[7] Background: The day after I informed my supervisors of my plan to engage in protected activities and speak about institutional racism at a student union meeting, AUPD conducted a welfare check at my off-campus home, where they had no jurisdiction. ECF. No. 7 (Count V). Thereafter, I asked AU for all Care Reports that led to the welfare check. AU designated Assistant Dean of Student Jaris Williams to address my request. He was the only Black managerial employee in his office; he was on vacation.

After returning from his vacation, Williams refused to send the Care Reports to me electronically. He said he would only provide me with printed copies of the Care Reports if I agreed to meet with him in person. I agreed. During the meeting, he told me he was giving me every Care Report, and handed me three printed Care Reports. He also said he alone made the decision to send Black AUPD officers to my home based on the three reports.

Eight months later, Williams wrote an internal memo about the meeting: he gave me four Care Reports in person. *See* Ex. 3. Evidence obtained through the Department's investigation also reveals that Williams was the last and the most junior managerial employee in his office to be notified of the Care Reports.

For my subsequent FERPA requests, AU either ignored them for months without acknowledgement, pretended not to understand the scope of my requests, or pretended to have provided me with all requested information when AU had, in fact, not.

**FERPA Complaint.** I therefore made a formal complaint to the Department of Education. I simultaneously sent the formal complaint to AU. AU ignored this communication for five months until the Department assigned an investigator to the case. AU then told the Department, but not me, that AU would provide me with access to the requested documents on its own. *See* Ex. 4 at 3. The Department took AU at its word. A month later, I followed-up with the Department.

_____

It does not appear to be a coincidence that Williams was made responsible for the lies eventually relayed to the U.S. federal government and myself. Williams' internal memo happened to be drafted the day before I specifically requested access to his memos about me; or, the memo was backdated.

The fourth Care Report that Williams claimed to have given me was made by my physician Dr. David Reitman, who serves as the medical director of AU student health center. Under AU Discrimination Policy, Dr. Reitman is a confidential source, who is forbidden from sharing with any university official reports of discrimination. During my medical care with Dr. Reitman, I discussed the health conditions I was developing because of my experience with discrimination. I discussed my protected activities and my plan to sue AU for discrimination. In his Care Report, Dr. Reitman disclosed to AU the above information, among other sensitive personal and private matters of mine. He added that he thought I was delusional and obsessive because the discrimination I described to him were too egregious to be true, in his professional judgment.

Only then, did the Department and I realize that AU never provided me with access to the requested documents.

Then, AU told the Department, but not me, that it had emailed me twice to provide me access. I never received the two alleged emails from AU. *See* Ex. 4 at 2. To date, AU has refused to provide evidence, such as email metadata and audit trails, to me or to the Department that it had actually sent the two alleged emails. *See* Ex. 4 at 3 (my request for metadata, which AU refused), and at 5 (example of email metadata). AU has never acknowledged the FERPA requests I sent between June 28 and June 29, 2022, in the manner Mr. Perillo prescribed, which continues to prevent me from alleging all relevant facts in the lawsuit.

I present the Court with AU's evasive and duplicitous FERPA responses to illustrate AU's tendency to use delaying tactics. I do not know what utility it perceives from such a course of action. Now, after I managed to file a highly complicated case *pro se*, AU has chosen to block me from sending its legal counsel and its employee-defendants the complaints and the request for Rule 4 (m) waivers.

AU's delaying tactics continues to monopolize my time and energy. I need to be able to maintain gainful employment to survive the current episode of inflation and recession, pay rent and bills, and

fund my highly complex litigation. I intend to start an online
education website (afreedom.school) that teaches undergraduate
students scientific methodologies that AU prohibited me from using
as a Ph.D. student. I also need to work on this lawsuit. AU's evasive
tactics are impeding these efforts. AU has made a mockery of the
Department's investigation, and appears prone to do the same to a
federal court.

Adverse Impacts of AU's Impediment

It is technologically impossible for me to confirm whether AU
or its employee-defendants have received my requests for Rule 4(d)
waivers. I also cannot confirm whether AU has deleted my notices of
the lawsuit from the 38 employees' email accounts, possibly before
those individuals were aware of it.

If the employee-defendants do not receive the documents I
tried to send, it could: (a) impact statutes of limitations; (b) prejudice
the employee-defendants' right to notice; (c) cause the permanent
loss of crucial evidence, and (d) prevent my communication,
negotiation, and settlement with the employee-defendants'.

To address these latent impacts, I have consulted Rule 4 and its comments for guidance to no avail.[8] AU has apparently made blocking my electronic communications a 24/7 priority for its IT staff. Creating more alternative email accounts would be a futile and somewhat ridiculous effort. I do not have most of the employee-defendants' home addresses or personal email addresses. It does not seem appropriate to mail legal papers to their workplace because AU is predisposed and likely very motivated to interdict such communications.

I therefore move the Court for the following reliefs, or, more appropriate reliefs based on the Court's judgment, for each of the above latent impacts:

1. Extend time limit on service of summons by 90 days for all defendants.[9]

2. Order AU to pay the actual cost for skip-tracing of all AU employee-defendants, so that I can mail the requests for

---

[8] I did notice that, in the 1993 comments for Rule 4, that I should not have requested Rule 4(d) waivers when the Rule 4(m) time limit would expire before the date on which the waiver must be returned. I humbly apologize for my mistake.

[9] Extending the time limit is necessary because AU's evasive tactics has created a level of chaos that has monopolized my time and diminished my ability to serve other defendants. For example, I spent June 29 to July 6, 2022 working on this motion.

Rule 4(d) waivers to its employee-defendants' home

addresses.

Respectfully,

*Pro Se*
zachmillsisawesome@gmail.com
520-358-3574
[Address in ECF. No. 2]

07/07/2022